IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PETER BEASLEY, §
§
　　　Plaintiff, §
v. § Case No. 3:22-cv-00532-X-BT
§
GREGORY GREENLEE, et al., §
§
　　　Defendants. §

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* plaintiff Peter Beasley initiated this civil action on March 7, 2022, asserting claims against Gregory Greenlee, Dennis Schultz, Blacks in Technology LLC (BIT LLC), and Blacks in Technology Foundation (BIT Foundation). *See* Compl. (ECF No. 3). Shortly thereafter, Beasley filed an amended complaint naming Larry Davis and Rondalynne McClintock as additional defendants (Greenlee, Schultz, BIT LLC, BIT Foundation, Davis, and McClintock collectively, "Defendants").[1] Am. Compl. (ECF No. 5). In his live pleading, Beasley asserts claims against Defendants under the civil RICO statute, 18 U.S.C. § 1962(a), (c), and (d), and 18 U.S.C. § 2511. *Id.* He also asks for a declaratory judgment that BIT Foundation is a "fictitious corporation." *Id.* 35.

---

[1] Beasley also named Dwayne Thomas, Robert Howard, and the Ohio Secretary of State as defendants, but he subsequently dismissed his claims against those parties (ECF Nos. 32, 45).

After filing their answers to Beasley's Amended Complaint (ECF Nos. 17, 20), Defendants filed a Rule 12(c) motion for judgment on the pleadings (ECF No. 78; ECF No. 83). Defendants argue that this lawsuit represents an improper attempt by Beasley to relitigate claims which were previously dismissed with prejudice by this Court in another lawsuit pending in this District: *Blacks in Technology International v. Blacks in Technology LLC, et al.*, Cause No. 3:20-cv-03008-X (N.D. Tex.) (the "First Lawsuit"). Defendants ask the Court to dismiss Beasley's claims as barred by the doctrine of issue preclusion or because they fail on the merits. Defendants' Rule 12(c) motion is fully briefed and ripe for determination.

Also pending before the Court are (i) Beasley's Motion for Leave to File a Second Amended Complaint (ECF No. 91) and (ii) his Motion for Partial Summary Judgment (ECF No. 98) as to his claim for a declaratory judgment that BIT Foundation is a "fictitious corporation."

For the reasons set forth below, the undersigned DENIES Beasley's Motion for Leave to File a Second Amended Complaint (ECF No. 91). The undersigned further recommends the District Judge GRANT Defendants' Rule 12(c) motion (ECF No. 78; ECF No. 83), DENY Beasley's Motion for Partial Summary Judgment (ECF No. 98) as moot, and DISMISS with prejudice all of Beasley's claims.

## I.    Background

As alluded to above, this lawsuit represents at least the second attempt by Beasley to sue Defendants and others for alleged violations of the civil RICO

statute. Beasley's claims in both actions center around his former business relationship with Defendants and the "Blacks in Technology" brand. In the First Lawsuit, Beasley brought claims as a counter-counter plaintiff against BIT LLC, BIT Foundation, Greenlee, and Schultz, including civil RICO claims and state law claims for civil conspiracy and defamation. *See* Orig. Counter Pet., Cause No. 3:20-cv-03008-X (ECF No. 56); First Am. Counter Pet., Cause No. 3:20-cv-03008-X (ECF No. 62). In response to Beasley's counter claims, BIT LLC filed a Motion for Judgment on the Pleadings under Rule 12(c). The Court granted the 12(c) motion and dismissed Beasley's civil RICO claims with prejudice, holding he lacked standing due to not plausibly alleging proximate causation or concrete financial loss. Cause No. 3:20-cv-03008, Mem. Op. & Order (ECF No. 218). The Court also dismissed Beasley's state law claims after working through the factors for determining whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). *Id.*

    In Beasley's live pleading, he brings claims that are largely duplicative of the claims the District Judge dismissed with prejudice in the First Lawsuit. First, Beasley requests the Court pierce the corporate veil, alleging that "BIT Foundation and BIT LLC have ignored the corporate formalities of board meetings, corporate minutes, and separation of corporate affairs with personal finances." Am. Compl. ¶ 166 (ECF No. 5). Beasley brings causes of action under the civil RICO statute— civil RICO pursuant to 18 U.S.C. § 1962(a) and (c) and civil RICO conspiracy pursuant to 18 U.S.C. § 1962(d). Beasley alleges "Defendants acting knowingly

used false promises in a scheme to defraud Beasley to obtain money" and that "[i]n furtherance of their scheme to defraud, and with the purpose of executing their schemes to defraud, BIT Defendants herein, caused the use of the mails, and interstate wires for the purpose of defrauding Beasley of tens of thousands of dollars." *Id.* ¶¶ 174, 175. Finally, Beasley brings a cause of action for interception of electronic communications pursuant to 18 U.S.C § 2511(1)(a). He alleges "Greenlee and Schultz have intentionally intercepted Beasley's e-mail communications and caused him damage." *Id.* ¶ 181.

Defendants now move for judgment on the pleadings, requesting the Court dismiss Beasley's claims with prejudice because the claims are barred by issue preclusion or because they fail on the merits. Defendants base their issue preclusion defense on the District Judge's order in the First Lawsuit granting BIT LLC's 12(c) motion and dismissing Beasley's counterclaims with prejudice. Defendants argue Beasley's civil RICO claims fail on the merits because Beasley was not the required direct victim of the purported RICO violations and Beasley fails to plausibly show any concrete financial loss and reputational injury by means of the alleged RICO violations. Defendants finally argue that Beasley's request to pierce the corporate veil fails since the predicate RICO claims fail.

## II.    Beasley's Motion for Leave to Amend

As a preliminary matter, the Court considers Beasley's attempt to avoid dismissal by seeking leave to amend the operative pleading—his First Amended Complaint.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While district courts "should freely give leave [to amend] when justice so requires," leave to amend "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)). Rather, district courts have discretion to grant or deny such a motion "and may consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (internal citation and quotation marks omitted). An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *See Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).

Additionally, "[i]t is not incumbent on the court to give litigants repeated opportunities to prosecute and defend their claims," particularly when, as here, the litigant has already made multiple attempts to amend his pleadings. *Arkansas v. Wilmington Trust N.A.*, 2020 WL 1249570, at *12 (N.D. Tex. Mar. 16, 2020) (citing

*Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (noting "judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case" (citing *Turnage v. General Electric Co.*, 953 F.2d 206, 208–09 (5th Cir. 1992))).

Beasley has already had multiple opportunities to amend his pleadings—in this lawsuit as well as the First Lawsuit. In this case, after amending his complaint once, as a matter of course, he filed a first motion for leave to amend and a proposed second amended complaint. Mot. (ECF No. 52). He then withdrew this request and replaced it with a second motion for leave to amend and a new proposed second amended complaint. Mot. (ECF No. 60). The Court denied Beasley leave to file his second amended complaint, because his proposed amendment would have been futile. Order (ECF No. 72). And in the First Lawsuit, Beasley as a counter-counter plaintiff attempted to bring many of the same claims he now asserts against the same Defendants arising out of the same basic factual allegations. *See* Cause No. 3:20-cv-03008, Original Counter Pet. (ECF No. 56); First Am. Counter Pet. (ECF No. 62).[2] Beasley filed an original counter petition,

---

[2] Although Beasley is proceeding *pro se*, the Court did not automatically subject his initial complaint to judicial screening under 28 U.S.C. § 1915(e) because he paid the $405 filing fee. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (applying § 1915(e) to a non-prisoner case). However, if the Court had screened his complaint under § 1915(e), it likely would have reached the conclusion that the Court should dismiss Beasley's claims as frivolous because they are duplicative of his claims in the First Lawsuit. *See Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[W]e have dismissed an appeal as frivolous because it involved a duplicative action arising from the same series of events and alleging many of the same facts as an earlier suit, concluding that repetitious litigation of virtually

then a first amended counter petition, and then attempted to file a second amended counter petition, which the District Judge denied him leave to file. *See* Cause No. 3:20-cv-03008, Order (ECF No. 204); *see also* Cause No. 3:20-cv-03008, Mem. Op. & Order (ECF No. 218) ("Apparently recognizing the inadequacy of the injuries he alleged in his complaint, Beasley has attempted to shore them up in his responsive briefing (as well as in his proposed second amended complaint, which he attempted to file after the period for motions to amend the pleadings had closed, and the Court denied him leave to file)[.]"). The District Judge ultimately dismissed Beasley's claims with prejudice, holding that amendment would be futile. *See* Cause No. 3:20-cv-03008, Mem. Op. & Order (ECF No. 218).

Beasley's most recent proposed amended complaint is largely a recitation of the same claims supported by the same accompanying factual allegations that Beasley presented in his second motion for leave to file an amended complaint, which this Court previously denied. *See* Order (ECF No. 72). To the extent that Beasley seeks functionally identical amendments as those requested in his previously denied motion for leave, the Court denies Beasley's request for leave for identical reasons—Beasley's proposed amendment would be futile. *See id*. And to the extent that Beasley seeks to add new claims on behalf of additional plaintiffs, he is prohibited from doing so because he is not an attorney. Federal law requires parties in federal court to litigate their cases "personally or by counsel" and does

---

identical causes of action is subject to dismissal under 28 U.S.C. § 1915[(e)] as malicious.").

not permit a layman to represent the interests of other parties. 28 U.S.C. § 1654; *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n a federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer."); *see also Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (explaining that a corporation may not appear in federal court without an attorney).

Accordingly, the Court denies Beasley's Motion for Leave to File a Second Amended Complaint (ECF No. 91).

### III.    Defendants' Rule 12(c) Motion

#### A.    Legal Standards

A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (internal citations omitted). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). However, when deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v.*

*Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion [for judgment on the pleadings] that are central to the claim and referenced by the complaint." *Smith v. Buffalo Wild Wings,* 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp. 3d 657, 665 (N.D. Tex. 2019) ("In ruling on [a Rule 12(b)(6)] motion, the court cannot look beyond the pleadings." (citing *Spivey*, 197 F.3d at 774)), *aff'd,* 824 F. App'x 210 (5th Cir. 2020).

In addition, courts may take judicial notice of matters of public record. *See Joseph v. Bach & Wasserman, L.L.C.,* 487 Fed. Appx. 173, 178 (5th Cir. 2012) (affirming that when ruling on a motion to dismiss, courts may take judicial notice of matters of public record, such as a pleading filed with a state district court); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (in the context of analyzing a *res judicata* contention in a motion to dismiss, clarifying that "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record").

Therefore, to survive a Rule 12(b)(6), or Rule 12(c), motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to

relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id*.

The court "must construe the pleadings of pro se litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (citing *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002) (per curiam)), "to prevent the loss of rights due to inartful expression." *Marshall v. Eadison*, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam)). But "such a liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp*., 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) (Boyle, J.) (footnote omitted).

B.    Analysis

Judged against the relevant standards, the undersigned recommends the District Judge grant Defendants' Rule 12(c) motion because Beasley fails to state a claim.[3]

1.    Beasley fails to plead a plausible civil RICO claim.

As the District Judge explained in his Order dismissing Beasley's civil RICO claims in the First Lawsuit, "[c]ivil RICO provides that '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.'" Mem. Op. & Order at 11 (ECF No. 218). And "the Supreme Court has long interpreted section 1964(c) to require a plaintiff to "show that a RICO

_____

[3] The Court may pretermit consideration of Defendants' argument that Beasley's claims are barred by non-mutual issue preclusion. Issue preclusion "precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). The third element invokes the issue of finality, which the Fifth Circuit has interpreted strictly. *See Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 229 (5th Cir. 2018) ("While our court has stopped short of requiring a judgment be appealable to be 'final' for collateral-estoppel purposes, it has repeatedly stressed the correlation between appealability under 28 U.S.C. § 1291 and finality for collateral estoppel."). The District Judge's Order granting the Motion for Judgment on the Pleadings and dismissing Beasley's counter claims in the First Lawsuit does not meet the strict finality test for issue preclusion. That order was an unappealable interlocutory order adjudicating only some of the claims presented in that—still pending—lawsuit. *See* Fed. R. Civ. P. 54(b).

predicate offense not only was a but for cause of his injury, but was the proximate cause as well." *Id.* "[W]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.*

As in the First Lawsuit, Beasley fails to sufficiently plead proximate causation for any of his civil RICO claims. Rather, throughout his Amended Complaint, Beasley alleges his injuries *indirectly* flowed from the Defendants' various alleged predicate offense activities directed not at Beasley, but at third parties. Such allegations fail to provide sufficient factual content to enable the Court to reasonably infer that Defendants are liable.

For example, in his opening description of the "nature of the action," Beasley states: "The lawsuit alleges a criminal, online wire-fraud swindle to dupe *people* to give money and volunteer *their time* . . . ." Am. Compl. ¶ 30 (emphasis added). This allegation is the first allegation of many in which Beasley asserts the alleged RICO violations led to injuries to third parties. Others include that "Defendants deceived Beasley, intercepted Beasley's email communications, withheld them, failed to disclose that Beasley worked at BIT International, and instead used the deception to take monies of *others*[,]" Am. Compl. ¶ 174 (emphasis added), that the purpose of alleged deception by Greenlee "is to take advantage of *volunteers*" and "to avoid paying taxes," Am. Compl. ¶ 49, and that "[t]he BIT Enterprise continues in 2022 to defraud *the public*." Am. Compl. ¶ 105. The District Judge explained the inadequacy of such allegations in his Order dismissing Beasley's civil RICO claims

in the First Lawsuit:

> Beasley alleges that his injuries indirectly flowed from the counter-defendants' various wire fraud activities directed at third-parties— "swindling monies from the United States government and from various corporations such as CitiGroup and Walt Disney, taking credit for the work of third-party volunteers and feigning ownership of business entities and social groups to earn money from job postings and T-shirt sales, and taking credit for the honest services of others by claiming to have founded Blacks in Technology in order to gain influence over volunteers and sponsors. . . . Although it is not at all clear that Beasley describes any actionable wrongdoing under RICO, it is perfectly clear that if any civil RICO claim exists, it belongs to those entities and individuals who were directly injured by the counter-defendants' actions.

Cause No. 3:20-cv-03008, Mem. Op. & Order at 12 (ECF No. 218).

And when Beasley does attempt to allege direct, proximately caused injury to himself, his conclusions are too bare and devoid of sufficient factual detail to plausibly establish proximate causation. Examples of these insufficient, conclusory allegations include "[t]he BIT Enterprise has caused Beasley the loss of over $100,000 in consulting fees, as a result of the injuries caused by the BIT Enterprise," Am. Compl. ¶ 81, and "Beasley was injured as a result of the scheme." Am. Compl. ¶¶ 175, 176, 187. While Beasley does not have to supply evidence or proof at this stage, he still must provide enough factual detail so that, when taking the allegations as true, a court can reasonably infer Beasley's own injury was proximately caused by Defendants' actions. Beasley's allegations do not provide sufficient detail to fill the gaps along the causal chain between, for example, losing $100,000 and Defendants' alleged wrongful conduct.

In addition to proximate causation, in order for a plaintiff to sufficiently

allege civil RICO standing, he must plead enough factual content to allow a court to reasonably infer he suffered "concrete financial loss." *In re Taxable Mun. Bond Secs. Lit.*, 51 F.3d 518, 523 (5th Cir. 1995) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). "The plaintiff's injury must be conclusive and cannot be speculative." *Gil Ramirez Grp., L.L.C. v. Hous. Ind. Sch. Dist.*, 786 F.3d 400, 409 (5th Cir. 2015) (cleaned up). "[D]amage to a plaintiff's subjective expectations cannot form the basis of a RICO claim." *Id.* at 409–10.

Beasley's allegations of injury are too vague and speculative to amount to concrete financial loss. Much of Beasley's Amended Complaint attempts to argue that Defendants harmed Beasley's professional prospects after the parties' relationship began to deteriorate. *See, e.g.*, Am. Compl. ¶ 82 ("Greenlee and Schultz made false statements that Beasley no longer worked at Blacks in Technology, which with Beasley being the Executive Director of Blacks in Technology International, Beasley was harmed in his volunteer and professional pursuits."). But these allegations of hypothetical future job prospects are too speculative to constitute concrete financial injury. *See In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 522 (explaining that plaintiff's contentions of lost "opportunity" to obtain a loan were too speculative to constitute injury for civil RICO, when there was no allegation plaintiff acted in reliance on a representation by defendants that loans would be provided); *Gil Ramirez Grp.*, 786 F.3d at 409 ("Injury . . . to an intangible property interest is not sufficient to confer RICO standing.") (cleaned up).

Where Beasley does mention tangible financial loss, those allegations still fail to sufficiently explain and plead how the alleged RICO violations directly led to such financial loss. For example, Beasley alleges "Greenlee promised that Beasley would be paid $55.00 an hour to create a new nonprofit corporation, BIT International." Am. Compl. ¶ 175. But as the District Judge pointed out in the First Lawsuit, this allegation stems from the parties' engagement agreement, which specified "Peter Beasley understands and accepts that no funds are currently available to pay Peter Beasley, and he agrees that Blacks in Technology may pay him for his accrued time under reasonable terms favorable to Blacks in Technology." *See* Cause No. 3:20-cv-03008, Mem. Op. & Order at 15 (ECF No. 218). Thus, this allegation fails to establish that Beasley was owed anything financially and does not sufficiently plead "the deceit crucial to be the stuff of [wire fraud and] a civil RICO claim." *Id.*

Accordingly, the Court should dismiss—as it did in the First Lawsuit—each of Beasley's civil RICO claims, regardless of the underlying racketeering activity Beasley attaches to them, for failure to state a claim.

2. <u>Beasley fails to sufficiently allege the BIT Enterprise engaged in a pattern of racketeering activity.</u>

"'Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (quoting

*Larrew v. Barnes*, 2002 WL 32130462, at * 1 n. 1 (N.D. Tex. Aug. 27, 2002), *rec. adopted,* 2002 WL 32130462 (N.D. Tex. Sept. 17, 2002)). "To establish a pattern of racketeering activity, [Beasley] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex*, 2012 WL 2864510, at * 2 (citing *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993)). A pattern of racketeering activity includes two or more acts of racketeering activity, *see* 18 U.S.C. § 1961(5), and "a 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742. "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted).

Continuity requires the related acts "constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 742 (citing *H.J. Inc.*, 492 U.S. at 239). Continuity may be established by "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. "A closed period of conduct may be demonstrated 'by proving a series of related predicates extending over a substantial period of time,'" while "[a]n open period of conduct involves the establishment of 'a threat of continued racketeering activity.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J. Inc.*, 492 U.S. at 242–43).

Beasley attempts to allege requisite continuity through the open-period theory, alleging "the continuity of the pattern of racketeering activity arises from the threat of continued activity given the predicate activity is continuous, ongoing

16

and will continue unless the BIT Defendants are stopped from continuing these racketeering activities." Am. Compl. ¶ 114. However, it is difficult to understand how Beasley can establish a threat of continued activity when the alleged criminal activity all relates to a business relationship that has since terminated. *See Auto-Opt Networks, Inc. v. GTL USA, Inc.*, 2014 WL 2719219, at *7 (N.D. Tex. June 16, 2014) (holding plaintiff did not sufficiently plead continuity required for a pattern when the predicate acts consisted of communications regarding a contractual relationship that had terminated); *Orthoflex*, 2012 WL 2864510, at *3 (holding plaintiff failed to plead continuity of racketeering activity where allegedly fraudulent communications occurred in the course of a distribution agreement that had since terminated); *Burzynski*, 989 F.2d at 743 (affirming that continuity was not established because "[a]ll of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended").

Like in the cited cases, Beasley's alleged predicate acts all relate to a relationship that has terminated. The alleged predicate acts consist largely of communications between the alleged BIT Enterprise and BIT's current or potential future customers in which BIT Enterprise, primarily through Greenlee, falsely claims that Beasley is not associated with the enterprise. *See* Am. Compl. ¶ 80 ("July 21, 2020, Greenlee sent a false e-mail message over the Internet claiming Beasley no longer worked at Blacks in Technology as part of the scheme to defraud Beasley, to pay him nothing, and to separate from Beasley."). While Beasley alleges in conclusory fashion that he expects similar communications will continue, it

17

would not be consistent with the relevant caselaw to accept Beasley's speculative predictions in view of the fact that the business relationship which surrounded the predicate acts has allegedly terminated.

For example, Beasley bases his wire fraud claims on the assertion that Defendants were lying to customers about his status within the alleged enterprise. It seems apparent at this point that—whether he likes it or not—Beasley is not associated with the BIT enterprise any longer. *See* Am. Compl. ¶ 79 ("By July 20, 2020 . . . Greenlee [the "mastermind" of the BIT enterprise] decided that day he wanted to have nothing further to do with Beasley."). Any wire communication relaying that fact could not be considered a fraud. Thus, his path towards vindication is not through federal civil RICO statutes. *See* Cause No. 3:20-cv-03008, Mem. Op. & Order at 15 (ECF No. 218) (quoting *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) (*en banc*)) ("Although RICO is a remedial statute and it is designed to have a broad sweep, it 'does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'").

Additionally, while throughout his Amended Complaint Beasley emphasizes his fear that Defendants will continue to engage in criminal activity that will harm the public at large, Beasley does not have standing to vindicate the rights of the public through the claims he brings. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover

threefold the damages *he sustains* . . . .") (emphasis added).

3. Beasley also fails to allege sufficient facts to state a claim for civil RICO conspiracy under 18 U.S.C. § 1962(d).

The civil RICO statute provides "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "To prove a RICO conspiracy, the [plaintiff] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005). As a threshold matter, "there can be no agreement to engage in a substantive RICO offense that does not exist." *Auto-Opt Networks*, 2014 WL 2719219, at *8.

For all the reasons explained above, Beasley has failed to sufficiently plead a substantive RICO violation under 18 U.S.C. § 1962(c) or § 1962(a). Therefore, along with his RICO claims under those subsections, the Court should dismiss Beasley's RICO conspiracy claims under subsection (d). *See id.* (dismissing plaintiff's RICO conspiracy claim for failure to state a claim, because "[i]f the amended complaint is insufficient to enable the court to draw the reasonable inference that there has been a pattern of racketeering activity, the same allegations cannot be the basis for a RICO conspiracy claim"); *Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) ("Because all other RICO claims have been dismissed, the RICO conspiracy claim must also be dismissed.").

4. To the extent Beasley asserts claims for wire fraud independent of any RICO claim, he fails to plausibly state a claim for relief.

The wire fraud act—18 U.S.C. § 1343—is a criminal statute, and there is no private cause of action under it. *See Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974) ("The wire fraud act, 18 U.S.C. § 1343, is closely analogous to the mail fraud statute, 18 U.S.C. § 1341, and likewise evidences no intent of Congress to grant additional federal question jurisdiction in civil cases."); *Brown v. Anderson*, 2016 WL 6903730, at \*4 (N.D. Tex. Oct. 5, 2016), *rec. accepted*, 2016 WL 6893723 (N.D. Tex. Nov. 21, 2016) (dismissing plaintiff's wire fraud claims with prejudice based on *Napper's* holding that "no private cause of action is permitted under the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343"). Therefore, the Court also should dismiss with prejudice Beasley's wire fraud claims claim under 18 U.S.C. § 1334.

5. Beasley fails to allege sufficient facts to state a claim against Greenlee and Schultz for interception of electronic communication in violation of 18 U.S.C. § 2511(1)(a).

In his live pleading, Beasley alleges Greenlee and Schultz violated 18 U.S.C § 2511(1)(a) through intentionally intercepting Beasley's e-mail communications. Am. Compl. ¶ 179-83. Specifically, he states that Greenlee agreed to provide Beasley with two private e-mail addresses and represented to him that the addresses were for Beasley's exclusive use when performing BIT-related work. *See* Am. Compl. ¶ 99. But, Beasley avers, Greenlee "was secretly intercepting and reading [his] electronic communications . . . [and] used Beasley's intercepted

communications to obtain sponsors and donors, to advance illegal purposes of the BIT Enterprise, and for Greenlee's own personal gain." *Id.* ¶ 100-01. Beasley further alleges he was not an employee at the time he was provided these email addresses, and Greenlee "had no authority or justification to intercept" his communications. *Id.* ¶ 102.

The Electronic Communications Privacy Act provides that "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided [in proceeding sections]." 18 U.S.C. § 2511(1)(a). Within the same chapter of Title 18—Chapter 119—Section 2520 dictates that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). "Accordingly, under the plain language of the Wiretap Act, it is clear that a private right of action is allowed under 18 U.S.C. § 2520 for violations of § 2511." *DIRECTV, Inc. v. Bennett*, 470 F.3d 565, 569 (5th Cir. 2006).

But even though Beasley has a private cause of action for interception of electronic communications, he still fails to state a plausible claim for relief. First, Beasley does not sufficiently allege that Greenlee or Schultz "intercepted" his emails for purposes of the Wiretap Act. "'[I]ntercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through

the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Further, in order for electronic communications to be intercepted, acquisition must occur contemporaneously with transmission—*i.e.*, acquisition must occur during "flight." *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461–62 (5th Cir. 1994); *see also Quantum Fitness Corp. v. Cybex Int'l, Inc.*, 2016 WL 6909284, at *4 (S.D. Tex. Feb. 10, 2016) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1535 (5th Cir. 1994)) ("[I]n the Fifth Circuit, interception must occur contemporaneously with transmission.").

Accordingly, regarding liability for interception of electronic communications, there is a critical distinction between electronic communications in transit and in storage. Once an email is received, it is no longer in transit—the email is stored and accessing it does not constitute an interception. *Steve Jackson Games*, 36 F.3d at 461–62; *see also Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 744 (S.D. Tex. 2010) ("Storing emails does not constitute an interception or other Wiretap Act violation."); *Hovanec v. Miller*, 2018 WL 1221486, at *4 (W.D. Tex. Mar. 7, 2018) ("Once an email is received at the email address, it is stored and is no longer in transit, even if it has not been read.").

Beasley does not sufficiently allege his e-mails were intercepted by Greenlee or Schultz. He does not allege that the emails were acquired during flight, contemporaneously with transmission. Rather, Beasley alleges Greenlee and Schultz had access to the two relevant email addresses and secretly read emails after they were received and stored.

22

Second, Beasley does not sufficiently allege that Greenlee or Schultz intercepted his emails through use of a "device" for purposes of the Wiretap Act. 18 U.S.C. § 2510(4); 18 U.S.C. § 2510(5). Beasley does not allege Greenlee or Schultz employed any device at all—he only alleges that Greenlee and Schultz were secretly reading Beasley's electronic communications directly from the email server where the communications were being stored. But "the drive or server on which an e-mail is received does not constitute a 'device' for purposes of the Wiretap Act." *Healix*, 747 F. Supp. 2d at 744. Accordingly, the Court should dismiss Beasley's claims against Greenlee and Schultz for interception of electronic communications for failure to state a claim.

6.  Beasley fails to allege sufficient facts to state a claim for relief based on piercing the corporate veil.

In his Amended Complaint, Beasley lists as his first cause of action "pierce the corporate veil." Am. Compl. ¶ 164-68. But piercing the corporate veil is not, in and of itself, a substantive cause of action. It is, rather, a means of imposing liability related to an underlying cause of action. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) ("Piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debts."); *Blacks in Tech. Int'l v. Greenlee*, 2023 WL 4186376, at *4 (N.D. Tex. June 26, 2023) (Starr, J.) ("The second claim—piercing the corporate veil—is not a cause of action, but rather a theory of recovery[.]").

23

To the extent Beasley alleges piercing the corporate veil in order to hold individual Defendants liable under the causes of action analyzed above, he fails to state a claim for such relief. Piercing the corporate veil does nothing to overcome the deficient allegations attached to each cause of action. For the reasons described above, even if the Court pierced the corporate veil, it would simply be standing on the other side of the corporate-versus-individual barrier still faced with insufficient pleadings to enable a court to reasonably infer defendant liability.

7.  Finally, the Court should, *sua sponte*, dismiss Beasley's claim requesting declaratory judgment for lack of subject matter jurisdiction.

In his Amended Complaint, Beasley "seeks a declaratory judgment that the BIT Foundation is a fictitious Ohio corporation, that its distinction as a corporation should be ignored, and to direct the Ohio Secretary of State to revoke BIT Foundation's charter." Am. Compl. 35; Am. Compl ¶ 39-44; *see also* Resp. (ECF No. 94) (citing 28 U.S.C. § 2201 as authority for Beasley's requested declaratory judgment). Under the Declaratory Judgment Act,

> In a case of actual controversy within its jurisdiction, [except in certain kinds of actions], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

But the Declaratory Judgment Act does not provide an independent cause of action. *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 932 (5th Cir. 2023). The Act provides an available remedy within the context of an

24

overarching "case or controversy" in which a plaintiff brings independent causes of action vesting the court with jurisdiction. *Id.*

This being the case, "[t]he Declaratory Judgment Act is not an independent basis for subject matter jurisdiction[,]" *Elldakli v. Garland*, 64 F.4th 666, 670 (5th Cir. 2023), and specifically, "[a] claim under the Declaratory Judgment Act is insufficient to confer federal question jurisdiction under 28 U.S.C. § 1331." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019).

For the reasons explained above, the Court should dismiss each of Beasley's claims that would have established federal question jurisdiction. Additionally, Beasley does not allege diversity jurisdiction and his Complaint does not provide any basis for exercising diversity jurisdiction. Since his remaining claim seeking declaratory judgment does not confer federal subject matter jurisdiction upon the Court, the Court should dismiss the claim *sua sponte*. *See EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 467 (5th Cir. 2009) (holding that courts must consider jurisdiction *sua sponte* even when neither party has raised the issue).

## Recommendation

For the reasons stated, the District Judge should GRANT Defendants' Motion for Judgment on the Pleadings (ECF No. 78; ECF No. 83), DENY Beasley's Motion for Partial Summary Judgment (ECF No. 98) as moot, and DISMISS Beasley's claims with prejudice.

**SO RECOMMENDED.**

**Signed** July 25, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).